UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| MICHAEL VAUGHAN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2: 18-203-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES DAVID GREEN, Warden,[1] | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Michael Vaughan has filed a petition for a writ of habeas corpus, seeking to "reverse [his] conviction, order the dismissal with prejudice of the indictment, order [his] immediate release, and make declarations in support of this Court's findings, after an evidentiary hearing." [Record No 1, p. 15] The petitioner, now an inmate at Eastern Kentucky Correctional Complex, alleges eleven grounds for relief. [Record Nos. 1 and 45] The matter was referred to a United States Magistrate Judge Edward B. Atkins under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Atkins has recommended that the Court deny the petition. [Record No. 42]

---

[1]      Vaughan named Scott Jordan, Warden of the Luther Luckett Correctional Complex, as the respondent when he initially filed the petition. [Record No. 1] Vaughan has since been transferred to Eastern Kentucky Correctional Complex where James David Green is Warden. [Record No. 22] As a result, the Court has revised the caption to reflect that Warden Green is now the proper respondent. *See* Fed. R. Civ. P. 17(d), 25(d); R. 2(a), 12 of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner made no timely objections to the Recommended Disposition. Instead, he filed a motion for an extension of time to file objections. [Record No. 45] But finding no good cause for an extension based on his argument and prior motions for extensions, the Court denied the motion. [Record No. 46] Regarding this issue, the Court notes that a party who fails to raise timely objections generally forfeits the right to appeal the district court's subsequent ruling on the issues analyzed in a magistrate judge's report. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019). Additionally, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Nevertheless, the Court has conducted a *de novo* review of the petition and all outstanding motions in the case. The Court agrees with Magistrate Judge Atkins' recommendation [Record No. 42] that Vaughan's petition [Record No. 1] and motion for an evidentiary hearing and expansion of the record [Record No. 36] be denied. Further, Vaughan's motion for limited discovery [Record No. 44] and motion to reconsider [Record No. 47], which he filed after Magistrate Judge Atkins issued the Recommended Disposition, will be denied. Therefore, the Court will deny the § 2254 petition and decline to issue a certificate of appealability ("COA").

## I. Factual and Procedural Background

Vaughan was arrested on December 26, 2013, after a stand-off and shootout with police officers at his Covington, Kentucky home. [Record No. 17-4, p. 62] Bond was set at $250,000. [Record No. 31, p. 32] Vaughan was indicted on February 27, 2014, on six counts of criminal

attempt to commit murder, one count of arson in the first degree, and one count of wanton endangerment in the first degree. [Record No. 17-2, pp. 1-2]

Vaughan retained counsel and was arraigned on March 10, 2014. *Id.* at pp. 3-8. The initial pretrial conference was set for May 6, 2014, rather than April 21, 2014, because defense counsel requested the later date. [Record No. 17-4, p. 62] No trial date was set during the May 2014 conference, and defense counsel stated at a subsequent July 14, 2014, conference that while the defense desired to schedule the trial, more time was needed for mental health evaluations. *Id.* at p. 5. Counsel provided official notice of intent to introduce evidence of mental illness on August 4, 2014, and the Commonwealth filed a reciprocal motion for an independent mental health evaluation on August 12, 2014. [Record No. 17-2, pp. 9-11]

The petitioner first raised his speedy trial concern in an August 5, 2014, letter to the trial court. [Record No. 31, p. 3] Vaughan has indicated that he informed the trial court of this issue in sixteen different letters. *Id.* at pp. 3-7.

Vaughan fired his initial counsel and retained a new attorney on September 16, 2016. [Record No. 17-2, p. 16] The trial court held a pretrial conference on September 29, 2014. *Id.* at p. 17. Vaughan's new counsel asked that no trial date be set at that hearing, in part, because former counsel had not provided relevant documents. [Record No. 17-4, p. 64] The court continued the case, noting that the former counsel's late mental health notice had already caused much delay. *Id.* The court finally scheduled trial for March 10, 2015, at the November 10, 2014, pretrial conference. *Id.*

However, discovery-related complications ensued, and the Commonwealth disclosed 123,000-124,000 messages it had downloaded from Vaughan's ex-girlfriend Crystal Wilbers' phone on February 19, 2015. [Record No. 17-2, p. 110] The Commonwealth conceded that

the messages had been downloaded at an earlier date but stated that multiple detectives had worked on the case and misplaced the files until February 2015. *Id.* The court declined to hold the Commonwealth at fault and determined that it was necessary to continue the trial to June 23, 2015. [Record No. 17-4, pp. 7-8, 65-66]

Several events relevant to Vaughan's petition occurred between the March and June 2015 scheduled trial dates. First, Wilbers contacted the court and reported that Vaughan, who had previously had access to a laptop while incarcerated, had been using it to harass her. [Record No. 17-2, p. 106] The court entered a no contact order and revoked Vaughan's computer privileges. *Id.* at pp. 106, 123. Second, Vaughan initiated a hunger strike to protest his lengthy pretrial incarceration. [Record No. 17-4, pp. 9-10] The Commonwealth accordingly moved for further mental evaluations. *Id.* Third, the Commonwealth disclosed in late May 2015 over 92,000 files that the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("the ATF") had downloaded from Vaughan's personal computers. *Id.* Finally, the defense formally moved to dismiss all charges on the grounds that Vaughan's speedy trial rights had been violated by the repeated delays. [Record No. 17-2, p. 82]

The court denied the motion to dismiss on June 3, 2015, and determined that the trial must again be continued. [Record No. 17-4, pp. 9-10] The court reasoned that the ATF's delayed disclosure of the files was out of the Commonwealth's control and found that the necessary further mental health evaluations would prolong the case. *Id.*

Following these evaluations, Vaughan was found competent to stand trial on August 24, 2015. [Record No. 17-4, p. 10] The court did not set a new trial date at that hearing because the docket was full in the near term and Vaughan had simultaneously moved to declare himself

indigent which required financial assessments. *Id.* The court rescheduled the trial for February 23, 2016, during a September 14, 2015, pretrial conference. *Id.*

But the case did not go to trial because Vaughan agreed to a plea deal on February 15, 2016. [Record No. 17-2, p. 164] When he signed the agreement, Vaughan was represented by appointed counsel as well as a guardian ad litem. *Id.* He pleaded guilty to six amended charges of wanton endangerment, but the agreement also included the signed addendum: "[The defendant] shall retain his right to appeal concerning his motion to dismiss for violations of 'speedy trial.'" *Id.* at p. 161.

Vaughan only contested the speedy trial issue on direct appeal to the Supreme Court of Kentucky. [Record No. 17-4, p. 1-17] His brief indicated that the Commonwealth's plea offer had reserved the right to appeal this sole issue. *Id.* at p. 12. The appellate court noted in its opinion affirming the conviction that Vaughan had entered a "conditional plea," the condition being that he could appeal the speedy trial claim. *Id.* at p. 68. The appellate court affirmed the conviction, and Vaughan filed a petition for rehearing. *Id.* at p. 96. He sought to submit a twenty-page petition and filed a motion for leave to exceed the ten-page limit on such motions. *Id.* at pp. 90-91. The Supreme Court denied the motion on November 3, 2017, and subsequently denied the petition for rehearing on February 15, 2018. *Id.* at pp. 95, 191.

## II. Procedural Bars

### A. Exhaustion and Procedural Default Standards

Vaughan seeks a writ of habeas corpus under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Before reaching the merits of any § 2254 petition, a federal habeas court must consider whether the alleged grounds for relief satisfy the "threshold" issues of

exhaustion and procedural default. *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013) (noting that procedural default is a "threshold rule"); *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009) (calling exhaustion a "threshold question").

Exhaustion and procedural default are related because they, "advance[] the same comity, finality, and federalism interests," but they are generally distinct legal doctrines. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). The exhaustion rule requires that an individual "exhaust[] the remedies available in the courts of the State" before petitioning a federal court for habeas corpus relief on the same grounds. § 2254(b)(1)(A). The United States Court of Appeals for the Sixth Circuit has found that a claim for relief satisfies § 2254(b)(1)(A) when its factual and legal basis has been "fairly presented" to the state courts. *Wagner*, 581 F.3d at 414. "[A] habeas petitioner need not exhaust any and all remedies that are potentially available to him in state court." *Clinkscale v. Carter*, 375 F.3d 430, 439 (6th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). Therefore, a petitioner need not argue a claim for relief by every means of collateral attack in state court before filing a § 2254 petition. *See id.* at 438. However, a petitioner must present the factual and legal basis of his claim to the relevant state's highest court. *Id.* at 437. When the petitioner fails to do so but could, conceivably, still raise the claim in state court, he has failed to exhaust that claim.

The Sixth Circuit recognizes two types of procedural default. First, a § 2254 petitioner can procedurally default when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017) (concisely articulating the analysis set out in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986)). Second, the Sixth Circuit has also found that a petitioner can procedurally default, "by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan*, 526 U.S. at 847-48). Such failure is a procedural default rather than an exhaustion issue when a petitioner can no longer pursue state court remedies for the defaulted claim. *Id.* (distinguishing this type of procedural default from exhaustion, which, under AEDPA, occurs when a petitioner has viable state court remedies at the time of the petition's filing). Federal habeas courts will not consider the merits of either type of procedurally defaulted claim, "unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Id.*

### B. Vaughan's Claims and the Warden's Arguments

The Court considers whether these threshold issues bar the petitioner's claims. The Warden contends that Grounds 8 and 10 fail for lack of exhaustion, Grounds 2-7 and 9 are procedurally defaulted, Grounds 2-11 are conclusory, and the Supreme Court of Kentucky's ruling on the Sixth Amendment speedy trial issue (Ground 1) should stand under an AEDPA deference analysis. [Record No. 17]

As the Warden's brief indicates, Vaughan's petition initially asserted the following eleven grounds for habeas corpus relief:

1. Vaughan's Sixth Amendment right to a speedy and public trial was violated. [Record No. 1-2, pp. 21-25];

2.	Vaughan was denied due process under the Sixth and Fourteenth Amendments when the Commonwealth spoliated and withheld 124,000 files from Crystal Wilbers' mobile phone. *Id.* at p. 25;

3.	Vaughan was denied due process under the Sixth and Fourteenth Amendments when the Commonwealth spoliated and withheld 92,000 files from his laptop. *Id.* at p. 26;

4.	Vaughan's Sixth Amendment speedy trial right was violated when the trial court delayed his trial while he was engaging in a hunger strike. *Id.*;

5.	Vaughan's Sixth and Fourteenth Amendment rights were violated when the Commonwealth withheld exculpatory *Brady* evidence. *Id.* at pp. 26-27;

6.	Vaughan's "defense was stolen" in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments when Kentucky State Police officers seized privileged documents pursuant to a warrant they fraudulently executed. *Id.* at p. 27;

7.	Vaughan was denied effective assistance of trial counsel in violation of the Sixth Amendment when the government withheld exculpatory *Brady* evidence. *Id.* at p. 28;

8.	Vaughan was denied effective assistance of appellate counsel in violation of the Sixth Amendment when his counsel misstated the record during his direct appeal. *Id.*;

9.	Vaughan was denied due process under the Sixth Amendment when the trial judge ceased to allow Vaughan access to his laptop, resulting in his inability to present a defense or assist his attorneys in presenting a defense. *Id.* at pp. 28-29;

10.	Vaughan was denied effective assistance of appellate counsel in violation of the Sixth Amendment when his counsel failed to address several issues during his direct appeal. *Id.* at 29; and

11.     Vaughan was denied due process under the Sixth Amendment when the Supreme Court of Kentucky enforced the petition for rehearing ten-page limit found in Kentucky Rule of Civil Procedure 76.32(3)(c). *Id.* at p. 29.

Vaughan has since conceded in his reply that the Warden is correct that Grounds 5, 7, 8, and 10 are procedurally barred, but he asserts that "[t]he other grounds were explicitly dealt with and presented to the KY Supreme Court." [Record No. 31, p. 38] He argues that Ground 1, the straightforward Sixth Amendment speedy trial claim, should succeed because the Supreme Court of Kentucky's opinion was unreasonable under the facts presented. *Id.* at p. 27. He contends that Grounds 2, 3, 4, and 9 were addressed by the Supreme Court of Kentucky in the direct appeal to the extent that they concern the alleged Sixth Amendment speedy trial right violations. *Id.* at p. 38. Further, Vaughan argues that Ground 6 was specifically presented to the trial and appellate court through his letters. *Id.* Finally, he states that Ground 11, which his petition initially argued as a Sixth Amendment violation [Record No. 1-2, p. 29], was a First and Fourteenth Amendment violation because the ten-page limit for petitions for rehearing is arbitrary. [Record No. 31, p. 39] Vaughan also contends that the state court's denial of his motion to exceed the page limit [Record No. 1-3, p. 15] serves as cause and prejudice to overcome any procedural bar to his other remaining claims because he did not have enough space to present them in the limited brief. [Record No. 31, p. 39]

### C. Procedural Bar Analysis

The Court notes at the outset that Vaughan's plea controlled the contours of what was presented to the Supreme Court of Kentucky, *i.e.* the arguments that face no procedural problems under § 2254. The defendant, his counsel, and the Commonwealth's Attorney signed a conditional plea agreement that expressly waived Vaughan's right to appeal except that "[the

defendant] shall retain his right to appeal concerning his motion to dismiss for violations of 'speedy trial.'" [Record No. 17-2, p. 161] His direct appeal's initial and reply briefs only concerned the speedy trial issue that is explicitly asserted in Ground 1 of his petition. [17-4, pp. 12, 56] Vaughan's petition for rehearing similarly only addresses the Sixth Amendment speedy trial claim. [Record No. 1-3, pp. 3-11] His present § 2254 petition acknowledges that he entered a conditional plea of guilty that reserved the right to appeal the Sixth Amendment issue. [Record No. 1, p. 2] Finally, the Supreme Court of Kentucky recognized that the plea was conditioned on the right to appeal the Sixth Amendment issue. [Record No. 1-6, p. 2] As a result, Vaughan likely waived any right to appellate review of other issues raised in his grounds for relief. *See* Kentucky Rule of Criminal Procedure ("RCr") 8.09 (explaining that a conditional plea of guilty in writing will only reserve the right to appeal a "specified trial or pretrial motion.").

The Court agrees with Vaughan's current position that Grounds 5, 7, 8, and 10 are procedurally barred.[2] The Court likewise finds that Grounds 2, 3, 4, and 9 are not barred because, like Ground 1, they largely concern issues the state court addressed in its opinion concerning the Sixth Amendment speedy trial issue. These latter grounds for relief all cite the Sixth Amendment. The direct appeal explicitly briefed the impact of the following on his speedy trial claim: delayed disclosure of the 123,000-124,000 files from his laptop (Ground 2), delayed disclosure of the ATF-related 92,000 files (Ground 3), and the hunger strike (Ground 4). The state court addressed these arguments, as well as the argument that the denial

---

[2] Although Vaughan concedes in his reply that these claims are procedurally barred, the Court nonetheless agrees with and adopts Magistrate Judge Atkins' analysis that Grounds 8 and 10 should be dismissed for failure to exhaust while Grounds 5 and 7 should be dismissed for procedural default. [Record No. 42, pp. 8-17]

of laptop access affected trial preparation (Ground 9), in its opinion affirming the conviction. [Record No. 17-4, pp. 61-76]  Vaughan's reply in the present matter states that he asserts these Sixth Amendment grounds as they relate to the trial delay, and the Court accordingly finds that he has exhausted them and faces no procedural default problems to the extent that they do concern he speedy trial claim.

However, Ground 6 is procedurally defaulted.  Vaughan's petition admits that he did not raise the illegal seizure of privileged documents argument on direct appeal or in a post-conviction action.  [Record No. 1-2, p. 30] The record similarly shows that this claim was not briefed in his direct appeal or his petition for rehearing.  [Record No. 17-4, pp. 1-18, 56-60, 96-105]

Vaughan has since lost the ability to litigate Ground 6 in Kentucky state courts, presenting a procedural default, rather than an exhaustion, problem.  The conditional plea language indicates that he waived further review of the allegations in Ground 6.  *See* RCr 8.09. There is a slight chance that, despite the plea's explicit limitations on issues for appeal, he could have raised the basis of Ground 6 in his direct appeal if the issue had been, "brought to the trial court's attention before the entry of the conditional guilty plea." *Dickerson v. Commonwealth*, 278 S.W.3d 145, 149 (Ky. 2009).   Still, Kentucky law would *now* procedurally bar a RCr 11.42 motion for postconviction relief because he did not actually raise the issue in the direct appeal.  *E.g. Clay v. Commonwealth*, 454 S.W.2d 109, 110 (Ky. 1970) ("The accused had a remedy by appeal for the consideration of the questions raised here, but he did not appeal. We have consistently held that RCr 11.42 procedure is not a substitute for an appeal and does not permit a review of all trial errors."); *see also Hampton v. Commonwealth*, 133 S.W.3d 438, 444 (Ky. 2004) ("Generally, a litigant may not raise on a

subsequent appeal any question that could have been raised as well as those that were raised upon a former appeal."). Vaughan cannot litigate this issue in Kentucky courts, and the claim is procedurally defaulted.

Vaughan has also failed to sufficiently show cause and prejudice to overcome a procedural default on Ground 6. He asserts that he *did* raise matter via letters that the courts ignored. [Record No. 31, p. 38] However, procedural default ensues when a petitioner fails to follow "ordinary appellate review procedures," *Williams*, 460 F.3d at 806, and here, the petitioner failed to mention this claim in the direct appeal or petition for rehearing.

He also asserts a catchall argument that the state court's denial of his motion to exceed the page limit constitutes cause and prejudice for all procedurally barred claims. [Record No. 31, p. 39] But this argument likewise fails for two reasons. First, the contention is conclusory, and "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). Second, Vaughan has submitted the brief that he would have filed for the petition for rehearing had the state court granted the motion to exceed the page limit, and that brief does not address the alleged illegal seizure. [Record No. 31-1] The petitioner has failed to show cause and prejudice regarding the procedural default of Ground 6, and the Court declines to reach the merits on this claim. *See Williams*, 460 F.3d at 807.

In summary, the Court does not reach the merits on Grounds 5, 6, 7, 8, and 10. The Court agrees with Magistrate Judge Atkins and the petitioner regarding the procedural bars to Grounds 5, 7, 8 and 10. Further, the Court finds that, despite his consistent assertions to the contrary, the petitioner has procedurally defaulted Ground 6. The Court will address the merits of Grounds 1, 2, 3, 4, 9, and 11 with the caveat that 2, 3, 4, and 9 will only be addressed to the

extent they concern, as Vaughan now contends, the state court ruling on the Sixth Amendment speedy trial issue.

### III. Vaughan's Claims to be Addressed on the Merits

### A. Standards of Review

When a claim has been exhausted and is not procedurally defaulted, a federal habeas court will consider the merits. In doing so, it applies a deferential standard of review under AEDPA. The habeas court will not grant the petition unless the state court's ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). The Supreme Court of the United States has held that the § 2254(d)(1) "contrary to" clause allows a habeas court to grant a writ, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Regarding a § 2254(d)(2) "unreasonable determination of the facts," state court findings of fact are presumed to be correct, and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e); *Burt v. Titlow*, 571 U.S. 12, 18 (2013). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*,

571 U.S. at 18 (internal quotations omitted). "[T]he record must '*compel* the conclusion that the [state] court had no permissible alternative' but to arrive at the contrary conclusion." *Carter v. Brogan*, 900 F.3d 754, 768 (6th Cir. 2018) (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (emphasis added)).

## B. Analysis of the Speedy Trial Claims

Vaughan essentially argues that Supreme Court of Kentucky made an unreasonable determination of the facts under § 2254(d)(2), and consequently, its decision was a § 2254(d)(1) unreasonable application of the Supreme Court of the United States' Sixth Amendment precedent in *Barker v. Wingo*, 407 U.S. 514 (1972). [Record No. 31] The state court applied the four-factor balancing test found in *Barker* and called it a "*Barker* inquiry." [Record No. 17-4, p. 68] The Court accordingly analyzes the state court decision's application of *Barker*.

The Sixth Amendment to the United States Constitution states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. In *Barker*, the Supreme Court held that speedy trial issues should be evaluated on an ad hoc basis. *Barker*, 407 U.S. at 530. It fashioned a four-factor balancing test for such assessments. *Id.*

First, a court must determine the "length of the delay." The length of the delay is a threshold inquiry, and courts need not reach the other three factors if the accused has not shown that the delay was long enough to be "presumptively prejudicial" rather than "ordinary." *Id.* "Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* A defendant is "the accused" for the purposes of the Sixth Amendment from the

earlier of the indictment or the arrest, and the length of the delay is therefore measured from the first of these events. *Dillingham v. United States*, 423 U.S. 64, 64-65 (1975).

The length of the delay in this case was approximately 26 months, the time between Vaughan's December 2013 arrest and his February 2016 guilty plea. The state court found this delay to be presumptively prejudicial [Record No. 17-4, pp. 69-70], and neither Vaughan, nor the respondent contests this finding.

The Court notes that the petitioner's case was complex, but agrees that the circumstances warrant examination of the latter three factors. Vaughan was indicted on six counts of attempt to commit murder, one count of arson, and one count of wanton endangerment after a prolonged shootout with law enforcement in Covington. The gravity and complexity of the charges, as well as the related fact that the case evidently required extensive discovery, weighs against further analysis. *See Barker*, 407 U.S. at 531 (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex" charge). Still, the Court finds that twenty-six months is long enough to be "presumptively prejudicial" and trigger further analysis.

The second factor, "[t]he flag all litigants seek to capture," is the reason for the delay. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). The purpose of this inquiry is to determine, "whether the government or the criminal defendant is more to blame for [the] delay." Doggett, 505 U.S. at 651. The Supreme Court explained in *Barker* that when courts evaluate the government's justification for a delay:

> [d]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest

> with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. However, when a delay is caused by the action or inaction of the accused's counsel, that delay is attributable to the defendant because the attorney is his agent. *Vermont v. Brillon*, 556 U.S. 81, 92-94 (2009) (holding that delays incurred by assigned counsel public defenders are attributable to defendants even though the attorneys are paid by the state); *see also Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (finding that petitioners "bear the risk of attorney error" regarding their attorneys' action or failure to act because counsels are agents).

The state court found that the reasons for the delay either weighed against Vaughan or are valid or neutral reasons attributable to the Commonwealth. First, it concluded that the prolonged time between the March 2014 arraignment and March 2015 first trial date is directly attributable to Vaughan because his initial retained counsel failed to file a timely notice of the defendant's intent to pursue a mental health defense and likewise failed to turn over documents to Vaughan's subsequent counsel. [Record No. 17-4, pp. 70-71] Second, the court determined that the delay between the June 2015 second trial date and February 2016 third trial date weighs the factor against Vaughan because: (1) the Commonwealth's disclosure of the 92,000 files immediately before the second trial date is a neutral or valid cause for delay because the ATF had not provided them to the Commonwealth; (2) the delay caused by Vaughan's hunger strike and subsequent mental evaluation is attributable to him because it was voluntary; (3) any delay caused by the trial court's handling of the prison laptop issue is attributable to him because he was harassing Wilbers; and (4) the reasons for setting the February 2016 trial date are neutral because he claimed indigency and the court had a crowded docket. *Id.* at 71.

The Court finds that, despite the state court's failure to account for the delay between the March and June 2015 trial dates, the record and Supreme Court precedent demonstrate that its broader conclusion was justified. The Commonwealth produced large amounts of discovery files shortly before trial on *two* occasions: once when it disclosed the misplaced 123,000-124,000 Wilbers files before the first trial date and again when it provided the more than 92,000 ATF-procured files before the second trial. Vaughan asserts, and the Court agrees, that the state court overlooked this event as a reason for the delay between the first two trial dates. [Record No. 31, p. 10] Still, no court has found a deviant motive for the first file dump, and the Commonwealth reasonably explained that the detectives misplaced the files. [Record No. 17-2, p. 110] The record indicates that even if the delay between the March 2015 and June 2015 trial dates is entirely attributable to the government due to this discovery issue, the reason for the delay was negligence, which is neutral and weighted less heavily than a deliberate attempt to delay trial.

All other reasons for the twenty-three month delay between arraignment and plea are valid, neutral, or negatively attributable to Vaughan.[3] The reason for the one-year delay between the March 2014 arraignment and March 2015 first trial date clearly weighs against Vaughan because his retained counsel's actions and inaction necessitated a later date for trial. The Commonwealth's second large discovery file disclosure is attributable to the government but valid due to the ATF's failure to produce evidence earlier. Even if he had a right to

---

[3]     The operative date for determining the *Barker* inquiry's "length of the delay" is the December 2013 date of Vaughan's arrest, but the optimal date for analyzing trial delays is the date of arraignment because no party considered trial dates prior to this time. The length of the delay was approximately twenty-six months, but the time between arraignment and plea, which occurred one week prior to the February 2016 trial date, was twenty-three months.

undertake the hunger strike, the consequence of the voluntary action, *i.e.* the trial delay due to mental health evaluations, is attributable to Vaughan and is, at least, a neutral reason and likely a deliberate act that weighs against Vaughan. The court's busy docket is a neutral reason attributable to the courts, and the indigency issue is a neutral reason attributable to Vaughan. Finally, it seems unlikely that Vaughan's harassment of Wilbers caused any substantive delay, as the proceedings concerning that episode occurred between the delays caused by the file disclosures.

It is difficult to arrive at the conclusion that the Commonwealth was "more to blame" for the twenty-three month period at issue than Vaughan because he contributed significantly to the delay and no evidence suggests that the government took any deliberate action to prolong the proceedings and prejudice the petitioner. Twelve of the twenty-three months of delay between arraignment and plea are directly attributable to Vaughan and weigh against him. The remainder of the delays have, at best, valid or neutral origins variably attributable to Vaughan, the Commonwealth, and the Courts. At worst, a portion of the delay between the June 2015 trial date and February 2016 plea and final trial date weighs heavily against Vaughan for his deliberate action. The state court's determination that the reasons for delay are valid, neutral, or negatively attributable to Vaughan was not unreasonable. The Court accordingly agrees with the state court that the second factor, on the whole, weighs against Vaughan's speedy trial claim.

The third factor to be addressed is whether the defendant asserted the speedy trial right. "The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-

- 18 -

32.  However, assertions of the right, "must be viewed in the light of [the accused's] other conduct," and is entitled to less weight when the accused is to blame for trial delays.  *Loud Hawk*, 474 U.S. at 314.

The state court determined that this factor weighed against Vaughan because his assertion was of the right was not vigorous and his counsel acquiesced to several of the continuances.  In his reply brief, which was not before the state court, Vaughan points to sixteen letters to the court that asserted the speedy trial right, beginning with the August 2014, correspondence.  [Record No. 31, pp. 3-7] But while these letters seem to clearly weigh in Vaughan's favor, the fact that many of the trial delays are attributable to him because of his actions or his counsel's actions weighs against him.  Therefore, the Court agrees with the state court's determination on this factor.

The fourth and final factor is prejudice to the defendant.  Prejudice is evaluated in light of three interests: "(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.  The last interest (impairment of the defense) is weighted heaviest because, "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id.*  "[The] possibility of prejudice is not sufficient to support [an accused's] position that [his] speedy trial rights were violated," particularly when the defendant cannot prove that his defense was impaired.  *Loud Hawk*, 474 U.S. at 315.

The state court found, and this Court agrees, that Vaughan has identified nothing that would "render [his] incarceration oppressive."  [Record No. 17-4, p. 73]  Vaughan claims that his incarceration was oppressive because he could not afford his $250,000 bond and his incarceration led to indigency.  [Record No. 31, pp. 32-33]   This is true, but incarceration

while awaiting trial often has such adverse consequences, as the Supreme Court has noted. *See Barker*, 407 U.S. at 532. Such consequences alone fail to establish that the incarceration was "oppressive."

The state court also found that Vaughan suffered "no unusual anxiety as a result of the charges against him." [Record No. 17-4, pp. 73-74] Vaughan does not identify Supreme Court precedent that would render the state court's analysis under the circumstances "unreasonable." Nevertheless, his reply's arguments regarding his repeated letters requesting a speedy trial, the appointment of a guardian ad litem, and his hunger strike present a fairly compelling case that the anxiety prong of the fourth factor weighs in his favor under *Barker*. [Record No. 31, pp. 33-34] It is hard to conceive how the petitioner could have been more anxious under the circumstances.

But the most important interest (impairment to the defense) weighs against Vaughan. The state court again mangled the facts regarding the two file disclosures, but the record indicates that it arrived at the correct conclusion that this prong weighs against Vaughan. The late disclosure of Wilbers' files may have resulted in the trial delay from March to June 2015, but Vaughan provides no argument that explains how this actually impaired his defense apart from his repeated and unjustified claims that the Commonwealth "spoliated the evidence." Record No. 31, pp. 34-35; *see Loud Hawk*, 474 U.S. at 315 (requiring a showing of actual, rather than possible, impairment). Similarly, he fails to make a nonconclusory argument that the second production of files at issue, the instance involving the ATF, impaired his defense. Record No. 31, pp. 34-35. And, as the state court notes, any impairment attributable to the trial court's revocation of laptop privileges stemmed from his own actions because Vaughan

used the computer to harass Wilbers. This impairment prong therefore weighs against Vaughan.

Two out of the three prongs of the fourth factor weigh against the petitioner. The Court therefore finds that the state court did not unreasonably apply Supreme Court precedent in determining that this factor weighs against Vaughan.

The Supreme Court of Kentucky's opinion concerning the Sixth Amendment issues is entitled to deference under § 2254. Applying such an analysis, the Court declines to grant the petition on the speedy trial claims because the state court, at the very least, did not unreasonably apply *Barker* or base its decision on an unreasonable determination of all relevant facts. As noted, the Court also agrees with the state court's broader conclusions regarding each factor.

### C. Analysis of the Page Limit Claim[4]

Vaughan is capable of raising interesting arguments when he proceeds *pro se*, but as the record demonstrates, he is not concise. Ground 11 of the petition attempts to capitalize on his verbosity by alleging that the Supreme Court of Kentucky violated his constitutional rights

---

[4] Ground 11 is likely procedurally barred because Vaughan's state court motion seeking leave to file a petition that exceeds the page limit did not actually allege what Ground 11 alleges, *i.e.* denial of leave to file a longer brief is unconstitutional. [Record No. 17-4, pp. 90-91] Instead, he alleged that he needs more pages to prove other constitutional violations. *Id.* However, the Warden does make this argument, and Vaughan did not have a chance to respond to it. The Court accordingly addresses the merits. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (indicating that habeas courts should not ordinarily raise procedural default *sua sponte* because, "a petitioner [may] be disadvantaged without having had an opportunity to respond.").

when it enforced the Kentucky Rule of Civil Procedure 76.32(3)(c) ten-page limit on petitions for rehearing.[5]

He calls the limit "arbitrary" but makes no argument regarding why this entitles him to *habeas corpus* relief under § 2254. [Record no. 31, p. 39] Additionally, the Court has read the longer twenty-page brief that Vaughan sought to submit to the appellate court [Record No. 31-1] and finds nothing that would entitle him to relief. And other courts have found that enforcing page limits is "a rather ordinary practice" that does not offend due process rights. *E.g.*, *Watts v. Thompson*, 116 F.3d 220, 224 (7th Cir. 1997); *Thomason v. Ludwick*, No. 2: 09–11012, 2011 WL 2693361, at *13 (E.D. Mich. July 12, 2011) (finding this to be the true in the context of a § 2254 petition). This Court likewise declines to find a constitutional violation that entitles him to relief on Ground 11.

## IV. Certificate of Appealability

A federal habeas court that denies a § 2254 petition must determine whether a COA should issue. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Under AEDPA, a court may issue a COA for a § 2254 petition, "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To successfully obtain a COA, Vaughan must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[5]     The petition itself alleges that this was a violation of the Sixth and Fourteenth Amendments while the reply claims that this was a violation of the First and Fourteenth Amendments. [Record Nos. 1-2, p. 29 and 31, p. 39]

The Court finds that no COA should issue for Grounds 5, 6, 7, 8, 10, and 11. Vaughan concedes that 5, 7, 8, and 10 are procedurally barred, and he has offered no argument that suggests that reasonable jurists would dispute the Court's conclusions that Ground 6 is procedurally defaulted and Ground 11 is meritless.

The Court also concludes that a COA should not issue for Grounds 1, 2, 3, 4, and 9. It is true that the state court appears to have overlooked the Commonwealth's initial disclosure of files prior to the first trial date, but the petitioner has failed to establish that reasonable jurists could disagree with this Court's conclusion that the state court, on the whole, did not unreasonably apply *Barker* given all of the facts pertaining to the Sixth Amendment claim. The *Barker* court indicated that a speedy trial inquiry involves a considerable amount of discretion in determining how procedural and factual circumstances affect each factor as well as how the factors themselves should be weighted in each case. *Barker*, 407 U.S. at 533 ("[The four factors] are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."). Here, the state court reasonably emphasized Vaughan's role in prolonging the trial court proceedings as well as the fact that any delay attributable to the Commonwealth resulted from neutral or valid reasons. *Barker* is a malleable test, and the state court's considerations and determinations were not an unreasonable application of Supreme Court precedent. Vaughan has not established that reasonable jurists could disagree with this conclusion, and the Court will decline to issue a COA.

### V. Discovery-Related Motions

Vaughan filed a motion for an evidentiary hearing and to expand the record [Record No. 36] on August 7, 2019, and subsequently moved for limited discovery [Record No. 44] on

September 17, 2019. The Court declines to grant these discovery-related motions because the current record establishes that his petition should be denied.

The Rules Governing Section 2254 Cases require a federal habeas court to review the state court and federal petition records, "to determine whether an evidentiary hearing is warranted." R. 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. However, AEDPA states:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings*, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2)(A)(ii)-(B) (emphasis added). The Supreme Court has also held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Vaughan's petition largely requires an exercise in § 2254(d)(1) deference, and the Court has no power to hold an evidentiary hearing. To the extent he advances procedurally barred claims and argues that the state court based its decision in § 2254(d)(2) unreasonable determinations of the facts, the Court finds that he has not met his burden under § 2254(e)(2). Despite his desire to discover and produce additional evidence, Vaughan's motion states: "[t]he clear & convincing evidence of the trial court record presented to the KY Supreme Court clearly demonstrates that the KY Supreme Court's factual findings resulted in findings of fact that were clearly erroneous & objectively unreasonable." [Record No. 36, p. 2] Simply put, Vaughan acknowledges that the factual bases of his claims were developed in the state court proceedings but contends that the state appellate court was wrong. The Court agrees that the

record on appeal was sufficient to resolve this case and finds an evidentiary hearing unnecessary.

The Court finds an expansion of the record and discovery unnecessary for the same reason. Habeas courts have discretion to order expansions of the record or limited discovery, but there is no reason to do so here because the record demonstrates that the state court determinations should stand. *See* R. 6(a), 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Vaughan also appears to seek discovery to recover documents that he believes will vindicate his positions in several civil cases formerly before this Court and demonstrate that he has not threatened public officials.[6] [Record No. 43, pp. 2-3] The Court refuses to indulge these requests.

## VI. Motion to Reconsider

Vaughan filed a motion on October 21, 2019, asking the Court to reconsider its Order [Record No. 46] denying an extension to file objections to the Magistrate Judge's report. [Record No. 47] The petitioner misconstrues the language of this Order. But even if he had not done so, he fails to cite any law that supports relief on this matter. The Court has given extensive consideration to the petition's arguments in this *de novo* review despite Vaughan's *ad hominem* attacks and distracting efforts to relitigate prior cases.

Based on the forgoing analysis, it is hereby

---

[6]     *See Vaughan v. Ky. Army Nat'l Guard*, No. 3: 15-cv-006-GFVT (E.D. Ky. 2016); *Vaughan v. Ky. Army Nat'l Guard*, No. 3: 12-053-DCR (E.D. Ky. 2012); *Vaughan v. Ky. Army Nat'l Guard*, No. 3: 12-035-DCR (E.D. Ky. 2012); *Vaughan v. Ky. Army Nat'l Guard*, No. 3: 12-034-DCR (E.D. Ky. 2012); *Vaughan v. Ky. Army Nat'l Guard*, No. 3: 12-033-DCR (E.D. Ky. 2012); *Vaughan v. United States*, No. 3: 10-054-DCR (E.D. Ky. 2010); *Vaughan v. Brigham*, No. 3: 10-005-DCR (E.D. Ky. 2010).

**ORDERED** as follows:

1.    Petitioner Michael Vaughan's 28 U.S.C. § 2254 petition [Record No. 1] is **DENIED**.

2.    Petitioner's motion for an evidentiary hearing and to expand the record [Record No. 36], motion for limited discovery [Record No. 44], and motion to reconsider [Record No. 47] are **DENIED**.

3.    The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to the petitioner.

4.    A certificate of appealability shall not issue.

Dated: October 21, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky